IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ABRAHAM CALDERON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-08277 |
| | ) | |
| THE VILLAGE OF BRIDGEVIEW, ILLINOIS | ) | Judge John Z. Lee |
| POLICE OFFICER C. PELL, et al, | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

**REPLY IN SUPPORT OF DEFENDANTS JESSE ORTIZ, DANIEL NESIS, TERRY THOMPSON, CESAR PEREZ, OFFICER C. PELL, AND GENEVIEVE LEFEVOUR'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)[1]**

**INTRODUCTION**

1. Plaintiff's response brief is littered with straw man arguments, comparisons to inapplicable cases, and outlandish accusations of racism (mostly directed at defendant Nelson Rodriguez) which are actually founded upon racist logic.[2] But his response brief is most notable for its omissions as Plaintiff completely ignores many of Defendants' arguments, including: (1) that his false arrest charge fails because he admits to committing a closely related charge; (2) that neither Nesis nor Ortiz were acting under color of state law; (3) that Plaintiff has offered no specific factual allegations demonstrating that Defendants acted with discriminatory intent; (4) that Plaintiff has not identified which § 1981 or § 1982 right Defendants deprived him of; (5) that Plaintiff has not alleged LeFevour had knowledge of any supposed conspiracy to violate his

---

[1] To the extent applicable, Defendants adopt all arguments contained in co-defendant Nelson Rodriguez's Reply in Support of Nelson Rodriguez's Motion to Dismiss. [Dkt. #110].

[2] Plaintiff accuses Mr. Rodriguez of being racist against Hispanics. The basis for this accusation is that Mr. Rodriguez is of Argentinian descent, and Argentinians have a history of prejudice against Hispanics. Therefore, Mr. Rodriguez must harbor animosity against Hispanics. [Dkt. #104, pp. 24-25]. The irony of this prejudicial accusation appears lost on Plaintiff.

constitutional rights; (6) that neither LeFevour nor Nesis had the power to prevent Plaintiff's criminal prosecution; and (7) that Plaintiff has not alleged LeFevour acted with malice.

2. Plaintiff's response makes clear that his claims have no basis in law or fact. Counts I, II, III, IV, V, VI, VII, XIII, and XIV of the TAC should be dismissed.

## ARGUMENT

### I. COUNTS I AND II FAIL TO STATE A CLAIM FOR FALSE ARREST

3. Counts I and II of the TAC allege that Officer Pell, Ortiz, and Nesis are liable under 42 U.S.C. § 1983 for false arrest and under Illinois law for false arrest, respectively.

4. In their Motion to Dismiss, Defendants argued that Count I failed against Nesis and Ortiz because they were not operating under color of state law. [Dkt. #75, ¶¶ 23-26]. Plaintiff ignored this argument.

5. Defendants also argued that Counts I and II failed against all three defendants under the "closely related charge" doctrine, which precludes a false arrest claim where the plaintiff could have been arrested for a charge closely related to the one he was actually arrested for. [Dkt. #75, ¶ 21]. In the TAC, Plaintiff admitted to flicking a cigarette at opposing fans, which would constitute battery or attempted battery (depending on whether the cigarette struck its target). [Dkt. #71, ¶¶ 236]. Thus, there was probable cause to arrest Plaintiff even under his own recitation of the events in question. Plaintiff ignored this argument.

6. Fortunately Plaintiff did not ignore all of Defendants' arguments. Plaintiff did attempt to argue that Officer Pell lacked probable cause to arrest Plaintiff for battery against Ortiz. Yet even this argument fails. Plaintiff asserts that Officer Pell ignored certain circumstances surrounding his arrest that should have convinced Officer Pell there was no probable cause to arrest Plaintiff. In particular, Plaintiff argues that Ortiz had no visible injury despite informing

Officer Pell that he had been struck in the back of the head. [Dkt. #104, p. 18]. Plaintiff further argues that his statement to Officer Pell should have been deemed more credible than Ortiz since Plaintiff admitted to Officer Pell that he committed a separate crime during the incident (i.e., flicking a cigarette at opposing fans) and then fled security personnel. *Id*. Thus, Plaintiff's supposed honesty should have raised his credibility in the eyes of Officer Pell. *Id*. at p. 19.

7. Plaintiff asserts that these facts require a jury to assess the credibility of Ortiz and Plaintiff in order to determine whether Officer Pell had probable cause to arrest Plaintiff. Plaintiff points to *Terry v. Talmontas*, 2013 U.S. Dist. LEXIS 28063 (N.D. Ill. Feb. 26, 2013) for support. A cursory review of that case shows why *Talmontas* is inapplicable. In *Talmontas*, the plaintiff was arrested for battery of a foster child, Matriana. *Id*. at *2. Plaintiff was in the residence of his then estranged wife, who was the foster parent to three children. *Id*. at *3. One of the three children was hospitalized after being found unresponsive in her bed with no visible injuries. *Id*. The police conducted an investigation of the incident and interview the two other foster children. The first child, Matthew, informed police that plaintiff had struck Matriana but only after changing his story multiple times. The other child, Sean, informed police that neither he nor the other foster children were ever subjected to physical abuse. *Id*. at *5.

8. The police also interviewed a nurse, Young, who sometimes watched the foster children. Young informed police that he was the one who found Matriana unresponsive and that he had heard a thump and saw Plaintiff running into a bedroom. *Id*. Upon further questioning, Young recanted his story and admitted he was not at the house when the incident occurred. *Id*. In his final version of events, Young stated that plaintiff was the only adult in the house when he left just prior to the incident. *Id*.

9.      Based on their investigation, the police obtained an arrest warrant, and a grand jury indicted plaintiff for battery. *Id*. at *6.  In obtaining the arrest warrant, the police did not inform the prosecutor that Sean stated plaintiff never physically abused any of the foster children.  The police also did not disclose the inconsistencies and contradictions in Matthew's statements. The prosecutor ultimately dropped Plaintiff's criminal charges. *Id*. at *7.

10.     Plaintiff sued the police for false arrest.  The police moved to dismiss, asserting that probable cause existed to arrest plaintiff based upon Matthew's statement that Plaintiff had struck Matriana and Young's assertion that plaintiff was the only adult at the house at the time of the incident. *Id*. at *19.  The Court denied the officers' motion, stating that, "[W]hether Matthew and Young provided Defendants with 'reasonably trustworthy information . . . sufficient to warrant a prudent person in believing that the suspect had committed' an offense is a factual issue that requires discovery." *Id*. at *20 (internal citation omitted).  The Court noted that Matthew's statements to police were contradictory, that Young admitted to lying to officers about the incident, and that Sean was adamant plaintiff had never abused the children. *Id*. at **20-21.  Thus, "[w]hether Matthew's inconsistent and wavering claims, Young's admitted lies, and Sean's insistent denials of abuse, all which must be accepted as true at this preliminary stage, created 'room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them,' or negated probable cause are factual issues requiring further proceedings." *Id*. at *21 (internal citation omitted).

11.     Here, unlike the plaintiff in *Talmontas*, Plaintiff provides no reasonable basis for why Officer Pell should have disregarded the veracity of both Ortiz and Nesis' accounts.  That Ortiz did not have a visible injury is unsurprising given the location of the strike—the back of his head.  Furthermore, Plaintiff's confession that he committed a separate crime and then attempted

-4-

to flee the scene does not enhance his credibility. It undermines his credibility and boosts that of Nesis and Ortiz since it demonstrates that Plaintiff was willing to commit a violent act and then attempt to run from the repercussions. The supposed facts elicited by Plaintiff do not come close to those present in *Talmontas*, which seriously undermined the presence of probable cause at the time of the arrest.

12. Plaintiff has therefore not alleged sufficient facts to demonstrate that Officer Pell acted without probable cause. *See Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994) (courts evaluate probable cause "not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer--seeing what he saw, hearing what he heard").[3]

## II. COUNT III AND IV FAIL TO STATE A CLAIM FOR VIOLATION OF 42 U.S.C. § 1981 AND 42 U.S.C. § 1982, RESPECTIVELY

13. Defendants moved to dismiss Counts III and IV, in part, on the basis that Plaintiff failed to identify which contract or property right Nesis and Ortiz interfered with on the basis of Plaintiff's race. Defendants pointed out that Plaintiff's ban from Toyota Park and the cancellation of his season tickets were decisions of the Village of Bridgeview and Chicago Fire, respectively. Plaintiff response, in its entirety, is as follows: "This argument misses the mark because Ortiz and Nesis essentially set the ban into motion by causing Plaintiff to be falsely arrested in the first instance." [Dkt. #104, p. 26].

14. Plaintiff cites no case law for support that a defendant can be liable for under § 1981 or § 1982 merely for setting "into motion" a sequence of events that results in the

---

[3] Defendants' motion to dismiss mistakenly failed to indicate in the title that the motion was being brought, in part, by Defendant Officer C. Pell. However, Section I makes clear that the motion was brought, in part, by Officer C. Pell as to Counts I and II of the TAC. [Dkt. #75, ¶¶ 15-31].

interference of one's contractual or property rights. Such argument, of course, is nonsensical since a defendant's intent to discriminate must concern a claimant's contractual or property right. *See Morris v. Office Max*, 89 F.3d 411, 413 (7th Cir. 1996). That a third-party—without the consent, authorization, or input of Nesis or Ortiz—decided to ban Plaintiff from Toyota Park or cancel his season tickets has no bearing on whether Nesis and Ortiz violated § 1981 or § 1982.

### III. COUNT III, IV, V, and VI FAIL BECAUSE PLAINTIFF HAS NOT ALLEGED THAT NESIS OR ORTIZ ACTED WITH RACIAL ANIMUS

15. In order to proceed on Counts III, IV, V, and VI of the TAC, Plaintiff must adequately allege that Nesis and Ortiz acted with racial animus. Plaintiff falls woefully short.

16. First, seemingly oblivious to the ramifications of his accusation, Plaintiff repeatedly accuses Nesis and Ortiz in his response brief of falsely arresting him as a result of personal animus stemming from a prior incident in which Plaintiff had complained of Monterrey Security's mismanagement of a team autograph session. [Dkt. #104, pp. 1, 28]. This accusation is repeated throughout the TAC. [Dkt. #71, ¶¶ 16, 228, 242, 306]. Plaintiff apparently does not realize that this accusation (bizarre as it may be) undermines, if not totally disqualifies, his assertion of racial animus.

17. Second, Plaintiff's attempt to uncover a hidden racial animus falls woefully short. Plaintiff's case for racial animus is based on the supposed disparate treatment between him and two other, non-Hispanic individuals: D.W. and Badr Tabbaq.

18. Plaintiff asserts that Tabbaq was not arrested despite being an "instigator" of the post-game incident and getting "into a physical altercation with one or more Monterrey Security employees." [Dkt. #104, p. 2]. As pointed out in Defendants' motion to dismiss, Plaintiff does not allege that Tabbaq committed any crime, thereby precluding any inference that Nesis and Ortiz failed to arrest Tabbaq solely because he's not Hispanic. Plaintiff ignores this inconvenient fact.

19. This inconvenient fact is further highlighted by Plaintiff's own TAC, which asserts that it was Nesis who informed Officer Pell that "Tabbaq was an instigator of the Post-Game Incident." [Dkt. #71, ¶ 108]. In other words, Nesis informed Officer Pell of the supposed misconduct committed by Tabbaq as an "instigator" of the incident, and Officer Pell simply chose not to make an arrest on this information. Thus, rather than cover for Tabbaq because he's not Hispanic, Nesis allegedly informed Officer Pell of Tabbaq's conduct.

20. Plaintiff's comparison to D.W. is even worse. The TAC asserts that D.W. committed various assaults during the 2018 season but was never arrested. [Dkt. #71, ¶ 262]. In their motion to dismiss, Defendants pointed out the TAC's failure to allege that: (1) D.W. was even at the May 20, 2018 incident; (2) that Nesis or Ortiz ever witnessed any crime committed by D.W.; or (3) that the Nesis or Ortiz ever refused to detain D.W. or have him arrested upon witnessing him commit a crime. True to form, Plaintiff responded with silence.

21. Simply put, Plaintiff has failed to establish that either Tabbaq or D.W. was similarly situated to Plaintiff such that the difference in treatment can create an inference of racial animus. *See LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942-943 (7th Cir. 2010) (holding that "dismissal [of an equal protection claim] at the pleading stage was appropriate because [plaintiff] failed to allege facts tending to show that it was similarly situated to any of the comparators" described in the complaint).

### IV. COUNT VI FAILS SINCE PLAINTIFF HAS FAILED TO ALLEGE LEFEVOUR'S KNOWLEDGE OF A CONSPIRACY

22. In Defendants' motion to dismiss, Defendants argued that Plaintiff failed to adequately plead the existence of a conspiracy. *See* Dkt. #75, pp. 15-16; *see also* Dkt. #110, pp. 8-10). Defendants further argued that Count VI against LeFevour asserting a claim under 42 U.S.C. § 1986 failed because, to the extent a conspiracy existed, Plaintiff failed to assert that LeFevour

had any knowledge of its existence. Plaintiff, again, has responded with silence, demonstrating that his § 1986 claim against LeFevour has no basis.

## V. COUNT VI FAILS SINCE PLAINTIFF HAS FAILED TO ALLEGE LEFEVOUR HAD THE POWER TO PREVENT PLAINTIFF'S PROSECUTION

23. To prove a § 1986 claim, a plaintiff must show that the defendant "had the power to prevent or aid in preventing the commission of a § 1985 violation" but neglected to do so. *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3rd Cir. 1994). The TAC purports to show that LeFevour had the power to stop Plaintiff's prosecution by LeFevour for not informing "the prosecutor that she had doubts as to the veracity of Ortiz and Nesis's accounts" based upon the "video evidence that exonerates Plaintiff[.]" [Dkt. #71, ¶¶ 200, 205].

24. In Defendants' motion to dismiss, LeFevour pointed out the flaw in this argument. [Dkt. #75, ¶ 61]. In response, Plaintiff has appeared to change tactics, now arguing that Plaintiff failed to intervene by not stopping "Ortiz from violating Plaintiff's civil rights." [Dkt. #104, p. 29]. Plaintiff further admonishes that "LeFevour had an obligation to not suborn perjury and should not have condone and facilitated Ortiz's lies in the face of cellphone videos." *Id*.

25. Besides the fact that this assertion will necessarily intrude upon the attorney-client privileged communications between Plaintiff and Ortiz, Plaintiff cites no support that LeFevour had the obligation or even ability to compel Ortiz to alter his story. Plaintiff cites no support that an attorney has an obligation under § 1986 to prevent a client from lying. This is especially so here where Ortiz accused Plaintiff of battery without the input or presence of LeFevour, making clear that she had nothing to do with his accusation. His purported decision to pursue battery charges was his voluntary decision, which cannot implicate LeFevour under the facts alleged.

## VI. COUNT VII FAILS TO STATE A CLASS OF ONE CLAIM

26. Arguing that his Class of One claim (Count VII) against Ortiz, Thompson, and Nesis should withstand dismissal, Plaintiff likens his case to *Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012). [Dkt. #104, p. 28]. In *Geinosky*, the plaintiff received 24 bogus parking tickets in a 14-month period from the same unit of the Chicago Police Department. *Geinowsky*, 375 F. 3d at 745. "Some of the tickets were inconsistent with others received at the same time, implying, for example, that [plaintiff's vehicle] was in two places almost at once or was simultaneously double-parked and parked on the sidewalk." *Id*. "Because none of the twenty-four tickets were legitimate, [plaintiff] had all of them dismissed." *Id*.

27. Before filing suit, plaintiff "tried other paths to stop the harassment," including making complaints to the police supervisors, the police department's Internal Affairs Division, and to the Independent Police Review Authority. His attempts to stop the harassment were unsuccessful.

28. Plaintiff then filed suit against the City of Chicago and eight officers, asserting *inter alia* a claim for "class-of-one" discrimination in violation of the Equal Protection Clause. *Id*. at 746. Plaintiff appealed the dismissal of his claim. *Id*.

29. On appeal, the Seventh Circuit reversed. The court first noted "that if class-of-one claims are not defined appropriately, they might turn many ordinary and inevitable mistakes by government officials into constitutional violations and federal lawsuits." *Id*. at 747. Thus, "[o]ne element of a proper class-of-one claim is a wrongful act that necessarily involves treatment departing from some norm or common practice." *Id*.

30. With those principles in mind, the court held that "the pattern and nature of defendants' alleged conduct do the work of demonstrating the officers' improper discriminatory

purpose" and "the alleged facts so clearly suggest harassment by public officials that has no conceivable legitimate purpose." *Id.* at 748.

31. The circumstances in this case are clearly distinguishable. Rather than a long pattern of inexplicable harassment like the one alleged in *Geinosky*, all Plaintiff can muster is an allegation that Plaintiff complained to "Monterrey Security staff…about other fans cutting long lines" and eight months later, Ortiz and Nesis exacted their revenge by framing him for a crime he did not commit, with Thompson in tow to add physical injury. [Dkt. #71, ¶¶ 218, 306].

32. Plaintiff would have this Court believe that these Defendants engaged in such despicable conduct simply because Plaintiff complained about line cutters some eight months earlier. Without further factual allegations supporting such a deranged theory, Plaintiff's class of one claim must be dismissed.

### VII. COUNT XIII FAILS TO STATE A CLAIM FOR MALICIOUS PROSECUTION AGAINST LEFEVOUR

33. In Defendants' motion to dismiss, LeFevour argued that Plaintiff's malicious prosecution claim (Count XIII) must be dismissed because Plaintiff: (1) failed to allege LeFevour acted with malice; and (2) failed to allege LeFevour had an active role in his prosecution. [Dkt. #75, ¶¶ 68-71]. As to the former argument, Plaintiff offered no counter.

34. As to the second, Plaintiff merely repeated the supposed comment made by LeFevour to the prosecutor and described such comment as "an active attempt to influence the continued unlawful prosecution of Plaintiff." [Dkt. #104, p. 30].

35. Plaintiff does not explain how one single comment to the Assistant State's Attorney—which clearly had no effect since the prosecutor dropped Plaintiff's battery charge moments later—could constitute an "active" role in Plaintiff's prosecution sufficient to satisfy the first element of a malicious prosecution claim. *See Adams v. Sussman & Hertzberg, Ltd.*, 292 Ill.

App. 3d 30, 44, 684 N.E.2d 935, 945 (Ill. App. Ct. 1997). Plaintiff further fails to explain how LeFevour's lone comment can be considered "both the cause in fact and a proximate cause of the commencement or continuation of the original criminal proceedings." *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 45, 2019 Ill. LEXIS 262 at *25.

## CONCLUSION

WHEREFORE, Defendants, JESSE ORTIZ, DANIEL NESIS, TERRY THOMPSON, OFFICER C. PELL, and GENEVIEVE MARIE LEFEVOUR, respectfully request that this Honorable Court enter an order dismissing Counts I, II, III, IV, V, VI, VII, XIII, and XIV of Plaintiff, ABRAHAM CALDERON's, Third Amended Complaint for Civil Rights Violations with prejudice, and for all other relief this Court deems just.

| | |
|---|---|
| Joseph R. Marconi, ARDC #01760173<br>Ramses Jalalpour, ARDC #6313128<br>JOHNSON & BELL, LTD.<br>33 W. Monroe, Ste. 2700<br>Chicago, Illinois 60603<br>(312) 372-0770<br>marconij@jbltd.com<br>jalalpourr@jbltd.com | Respectfully Submitted,<br><br>JESSE ORTIZ, DANIEL NESIS, TERRY THOMPSON, OFFICER C. PELL, GENEVIEVE MARIE LEFEVOUR<br><br>By:  /s/ *Ramses Jalalpour*<br>       One of Their Attorneys |

#4840-9820-5854

**CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all parties of record.

/s/ *Ramses Jalalpour*