IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ABRAHAM CALDERON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 18 C 8277 ) ) Judge John Z. Lee |
| THE VILLAGE OF BRIDGEVIEW, ILLINOIS, et al., | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Abraham Calderon alleges federal and state claims against the Village of Bridgeview, Monterrey Security Consultants, Inc. ("Monterrey Security"), and individual defendants, relating to an incident following a Chicago Fire professional soccer match in May 2018. The individual defendants include Monterrey Security employees, Monterrey Security's outside counsel, and the Chicago Fire's President and CEO. Three motions to dismiss have been filed [74][80][118]. For the reasons stated herein, those motions are granted in part and denied in part.

## Background[1]

The Court now presents those facts in Calderon's 361-paragraph complaint that are pertinent to the resolution of the instant motions to dismiss.

Calderon is a member of "Sector Latino," a group of supporters of the Chicago Fire professional soccer team that are largely of Mexican-American descent. Third Am. Compl. ("TAC") ¶¶ 174, 177, ECF No. 71. On May 20, 2018, following a match between the Chicago Fire and Houston Dynamo, a large fight broke out between the teams' fans in the parking lot of Toyota Park in Bridgeview, Illinois. *Id.* ¶¶ 2, 14. Calderon alleges that shortly before the fight, Jesse Ortiz and Daniel Nesis, employees of Monterrey Security—a firm that Bridgeview contracted with to provide security at Fire matches—falsely accused Calderon of striking Ortiz in the head. *Id.* ¶ 15. Ortiz and Nesis purportedly harbored personal animus against Calderon going back to a September 2017 Chicago Fire team autograph session, where Calderon had complained that the security staff, including Ortiz and Nesis, had done a poor job of managing the event and preventing people from cutting the lines. *Id.* ¶¶ 16, 218, 219.

As a result of Ortiz and Nesis's false accusation, another Monterrey Security employee, Cesar Perez, physically detained Calderon and transferred him to the lock-up room located within Toyota Park. *Id.* ¶¶ 71–79. When detaining Calderon, Perez injured Calderon's wrists by handcuffing him and picking him up from the

---

[1] The following facts are taken from Calderon's third amended complaint and are accepted as true at this stage. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (stating that, at the motion-to-dismiss stage, the court "accept[s] as true all well-pleaded facts alleged").

asphalt by his handcuffs. *Id*. ¶¶ 76–78. In lockup, yet another Monterrey Security employee, Terry Thompson, pushed Calderon's body and face against the wall and excessively tightened Calderon's handcuffs. *Id*. ¶¶ 84–91.

According to Calderon, Ortiz and Nesis also falsely told Bridgeview Police Officer C. Pell that Calderon had struck Ortiz. *Id*. ¶¶ 18–19. Calderon was arrested and eventually charged with battery, but that charge was dismissed in December 2018 through an entry of *nolle prosequi*. *Id*. ¶ 212.

Before the charge was dismissed, Genevieve LeFevour, Monterrey Security's outside counsel, allegedly learned of evidence that undermined Ortiz's account of his interaction with Calderon on May 20, 2018. *Id*. ¶¶ 197–202. She nevertheless did nothing to have the false charges dropped. *Id*. Similarly, the Chicago Fire's President and CEO, Nelson Rodriguez, had access to videos that exonerated Calderon, but made no efforts to convince the prosecutor to drop the charge against Calderon. *Id*. ¶¶ 163, 164, 172. Mike Bubacz, a contract employee for Major League Soccer, too allegedly "failed to intervene to stop the wrongful prosecution of [Calderon]." *Id*. ¶ 301.

Based on these allegations, Calderon asserts claims which include: a violation of 42 U.S.C. § 1983 for false arrest against Ortiz, Nesis, and Officer Pell (Count I); false arrest against Ortiz, Nesis, and Officer Pell (Count II); a violation of 42 U.S.C. § 1981 against Ortiz, Nesis, and Rodriguez (Count III); a violation of 42 U.S.C. § 1982 against Ortiz, Nesis, and Rodriguez (Count IV); a violation of 42 U.S.C. § 1985(3) against Ortiz, Nesis, and Rodriguez (Count V); a violation of 42 U.S.C.

3

§ 1986 against Nesis, Rodriguez, Bubacz, and LeFevour (Count VI); a class-of-one equal protection claim against Ortiz, Nesis, and Thompson (Count VII); malicious prosecution against Ortiz, Nesis, and LeFevour (Count XIII); and intentional infliction of emotional distress against Ortiz, Nesis, LeFevour, Perez, Thompson, and Rodriguez (Count XIV).

Three motions to dismiss have been filed. *See* Mot. to Dismiss by Defs. Ortiz, Nesis, Thompson, Officer Pell, and LeFevour, ECF No. 74; Mot. to Dismiss by Def. Rodriguez, ECF No. 80; Mot. to Dismiss by Def. Bubacz, ECF No. 118. The Court now turns to those motions.

## **Legal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In this way, the complaint must put the defendants on "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In addition, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, "allegations in the form of legal conclusions are insufficient to

4

survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## Analysis

I.  **False Arrest (Counts I and II)**

A.  **Officer Pell**

The Defendants argue that Officer Pell had probable cause to arrest Calderon and thus the federal and state false-arrest claims against him should be dismissed. Mem. in Support of Mot. to Dismiss by Defs. Ortiz, Nesis, Thompson, Pell, and LeFevour ("Mem. in Supp. Mot. to Dismiss 1") at 5–7, ECF No. 75; *see Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) ("Probable cause is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and section 1983." (quoting *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 622 (7th Cir. 2010))); *Ross v. Mauro Chevrolet*, 861 N.E.2d 313, 317 (Ill. App. Ct. 2006) (stating that, to establish a state law false-arrest claim, "a plaintiff has to show that she was unreasonably restrained without probable cause").

The Court agrees that Calderon's own account of the events, as stated in his complaint, establishes that Office Pell had probable cause to arrest Calderon. *Cf. Flournoy v. Winnebago County Sheriff's Dept.*, 622 F. App'x 584, 585 (7th Cir. 2015) (affirming the grant of a motion to dismiss a § 1983 claim where the facts in the complaint established the existence of probable cause). Specifically, Calderon

5

alleges that Office Pell arrested him based on the firsthand accounts of two eyewitnesses, Ortiz and Nesis, and Calderon does not plausibly allege that Officer Pell should have doubted those firsthand accounts. *See Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015) ("Probable cause can be based on a single identification from a credible eyewitness."); *Fleming v. Livingston County, Ill.*, 674 F.3d 874, 879 (7th Cir. 2012) (stating that the probable-cause standard "does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable" (quoting *Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999))). Further, though Officer Pell did not verify what Ortiz and Nesis told him by checking security footage, Calderon does not allege that Officer Pell had access to the footage at the time of the arrest. Regardless, the Court is not persuaded that Officer Pell was required to check such footage before he had probable cause to arrest Calderon. *See Sheik-Abdi v. McClellan,* 37 F.3d 1240, 1248 (7th Cir. 1994) (finding that officers had probable cause for an arrest even though they failed to first perform a full investigation of the arresting charges).

The Court thus dismisses Calderon's federal and state false-arrest claims against Officer Pell.

### B. Ortiz and Nesis

The Defendants argue that Ortiz and Nesis were not acting under color of state law at the time of Calderon's arrest and that the federal false-arrest claims against them thus should be dismissed. Mem. in Supp. Mot. to Dismiss 1 at 7–8; *see Miller v. City of Chicago*, No. 19 C 4096, 2019 WL 6173423, at *1 (N.D. Ill. Nov.

6

20, 2019) (explaining that while § 1983 generally does not permit suits based on private conduct, "[a] number of exceptions allow § 1983 liability when a private entity acts under color of state law."). Calderon concedes this argument because he did not address it in his response brief. *See, e.g.*, *Mart v. Forest River, Inc.*, 854 F. Supp. 2d 577, 593 n.14 (N.D. Ind. 2012) (holding that plaintiff conceded the validity of an argument made in a motion to dismiss by failing to address it in his response brief).

The Court reaches a different conclusion, however, with respect to the state law false-arrest claims against Ortiz and Nesis. Defendants argue that these claims should be dismissed on the ground that Ortiz and Nesis also had probable cause to detain Calderon. Mem. in Supp. Mot. to Dismiss 1 at 8–9. But Defendants' argument here relies on assertions contained in prior versions of Calderon's complaint, *id.* at 8, which the Court will not consider. *See, e.g.*, *Ticketreserve, Inc. v. viagogo, inc.*, 656 F. Supp. 2d 775, 779 (N.D. Ill. 2009) ("Once an amended complaint is filed it supersedes the original complaint and controls the case from that point forward."). Moreover, while the Court agrees with the Defendants that the complaint described a "chaotic situation" in the parking lot, Mem. in Supp. Mot. to Dismiss at 9, the Court disagrees that any error Nesis and Ortiz made in identifying Calderon as the individual that attacked Ortiz must have been "an honest mistake" as a matter of law. *Cf. Thayer v. Chiczewski*, 705 F.3d 237, 250 (7th Cir. 2012) (stating that it was "questionable" whether officers had probable cause to arrest the plaintiff for disorderly conduct at a protest even though the

7

arrest unfolded during a "chaotic and fluid situation"). Accordingly, Calderon's federal false-arrest claims as to Ortiz and Nevis are dismissed. His state law false-arrest claims remain.

## II. Claims under § 1981 (Count III), § 1982 (Count IV), § 1985(3) (Count V), and § 1986 (Count VI)

Calderon's claims under § 1981 (Count III), § 1982 (Count IV), § 1985(3) (Count V), and § 1986 (Count VI), each require him to establish that the Defendants acted with racial, or other classification-based, animus. *See Morris v. Office Max*, 89 F.3d 411, 413–14 (7th Cir. 1996) (§ 1981); *id.* at 413 (§ 1982); *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (§ 1985(3)); *Copeland v. Northwestern Mem. Hosp.*, 964 F. Supp. 1225, 1241 (N.D. Ill. 1997) (explaining that § 1986 liability is "strictly derivative" of § 1985(3) liability).

The Court dismisses these claims because, as the Defendants argue, and notwithstanding Calderon's conclusory assertions to the contrary, Calderon has not plausibly alleged that any of the Defendants intended to discriminate based on race. *See* Mem. in Supp. Mot. to Dismiss 1 at 12–15; Mem. in Support of Mot. to Dismiss by Def. Rodriguez ("Mem. in Supp. Mot. to Dismiss 2") at 6–9, ECF No. 81; Mem. in Support of Mot. to Dismiss by Def. Bubacz ("Mem. in Supp. Mot. to Dismiss 3") at 6, ECF No. 119; *Naguib v. Ill. Dept. of Prof'l Reg.*, 986 F. Supp. 1082, 1092 (N.D. Ill. 1997) ("A complaint which merely contains conclusory allegations of . . . discrimination will not survive a motion to dismiss. . . . [B]ald assertions of discriminatory animus . . . unsupported by any meaningful factual allegations, is not enough to withstand a motion to dismiss."); *cf. Matthews v. Hughes*, No. 14 C

7582, 2015 WL 5876567, at *1, *3 (N.D. Ill. Oct. 5, 2015) (finding allegations of a racially-motivated conspiracy sufficient to support a Section 1985(3) claim when the plaintiff specifically pleaded, among other relevant facts, that the fire chief regularly directed racial slurs at African-American firefighters, questioned their qualifications, and fired two of them).

First, as for Defendants Ortiz, Thompson, and Nesis, the complaint argues almost exclusively that their behavior toward Calderon resulted from personal, non-racial resentment they developed during a team autograph session in 2017 during which Calderon complained about their handling of the event. *See, e.g.*, TAC ¶ 306 ("Defendants Ortiz, Thompson, and Nesis sought to deprive Plaintiff of his rights to equal protection under the law based upon their personal animus toward him resulting from their interactions with him during the . . . 'meet the team' event in 2017.").

The complaint also lacks facts to create a plausible inference that Rodriguez harbored discriminatory intent. While Calderon notes in his complaint that Rodriguez previously has disciplined Sector Latino for their conduct at Chicago Fire matches, TAC ¶¶ 181–83, he does not directly dispute that Sector Latino members violated the fan code of conduct on those occasions or plausibly allege that they were specifically targeted because of their ethnicity. Relatedly, Rodriguez's attempt to stop a homophobic chant by some members of Sector Latino that even Calderon acknowledges was "particularly offensive," *id.* ¶ 179, does not signify racial animus, but an effort to create an environment *free of bigotry*. Further, the Court takes no

9

stock in Calderon's repeated suggestions that Rodriguez harbored anti-Hispanic animus simply by virtue of his Argentinian ancestry. *See, e.g.*, Resp. in Opp. to Mots. to Dismiss at 24, ECF No. 104. Such assertions display Calderon's own prejudices and have no place before this Court.

Finally, Calderon's attempts to compare himself to two non-Hispanic soccer fans fails to create a plausible inference of discriminatory intent on behalf of any of the Defendants. Specifically, Calderon's passing references to "Badr Tabbaq," a Houston Dynamo fan who allegedly was not arrested despite being an instigator of the post-game fight on May 20, 2018, are vague and lack sufficient detail to create a plausible inference that Calderon was treated worse than Tabbaq on account of his race. *Cf. Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 831 (7th Cir. 2007) (stating, in assessing a § 1981 claim, that when a plaintiff points to similarly situated individuals, there must be "enough common features between the individuals to allow a meaningful comparison"). And Calderon's references to Chicago Fire fan "D.W.," who allegedly assaulted a minor at a different Chicago Fire match and yet was not arrested as a result, have even less detail. For example, Calderon does not allege that D.W. was present at the May 20, 2018 fight or that any of the named Defendants ever witnessed him committing a crime. *See id.*; *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) (explaining that, to create an inference of discrimination by pointing to the treatment received by other individuals, Plaintiff must "eliminate confounding variables, such as differing roles . . . or decision-making personnel.").

The Court thus dismisses Counts III, IV, V, and VI[2] in their entirety.

### III. Class-of-One Equal Protection Claims (Count VII)

The Defendants further seek to dismiss Calderon's class-of-one equal protection claims against Ortiz, Thompson, and Nesis. Mem. in Supp. Mot. to Dismiss 1 at 18–19. A plaintiff states a class-of-one equal protection claim by alleging that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Frederickson v. Landeros*, 943 F.3d 1054, 1060 (7th Cir. 2019) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "To be considered 'similarly situated,' a plaintiff and his comparators (those alleged to have been treated more favorably) must be identical or directly comparable in all material respects." *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010); *see also McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004) (stating that for class-of-one claims, "similarly situated individuals must be very similar indeed").

The Court dismisses Calderon's class-of-one claims. First, these claims are predicated on an alleged animus that Ortiz, Thompson, and Nesis harbored against Calderon based on a team autograph session eight months before the events in question. TAC ¶ 306. At that autograph session, Calderon allegedly complained about Monterrey Security's handling of the event, and, "in particular," how "other fans [were] cutting long lines that had formed in front of certain soccer players." *Id.*

---

[2] Count VI, which asserts § 1986 claims against Nesis, Rodriguez, Bubacz, and LeFevour, must be dismissed because, as explained *supra*, Calderon has not adequately pleaded his § 1985(3) claim. *Copeland v. Northwestern Mem. Hosp.*, 964 F. Supp. 1225, 1241 (N.D. Ill. 1997).

11

¶ 218. According to Calderon, because of the anger Monterrey Security employees felt as a result of Calderon's criticism, Ortiz and Nesis—who, by the way, Calderon does not definitively assert were even present at the autograph session, TAC ¶ 219—targeted Calderon eight months later in a crowded, chaotic parking lot following the May 20, 2018 soccer match. The Court finds this narrative implausible, particularly given the lack of any meaningful connection between the September 2017 autograph session and the Defendants' conduct on May 20, 2018. Indeed, how does Calderon know that this was the motive for his arrest? For example, did any of the Defendants reference their prior interactions with Calderon? Or mention that they recognized him? The complaint is devoid of any such allegations. *Cf. LeForge v. BAC Home Loans Servicing, L.P.*, No. 10 C 859, 2011 WL 1532139, at *5 (N.D. Ill. Apr. 21, 2011) (granting a motion to dismiss on the ground that allegations of malice were based on a narrative that "str[uck] the Court as implausible"); *Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Moreover, the Court is not persuaded by Calderon's attempt to state his class-of-one claim through the use of comparators. Specifically, though Calderon points to "Badr Tabbaq," and "D.W.," the complaint lacks facts plausibly alleging that they were similarly situated to Calderon. As noted *supra*, the complaint only offers vague, limited details about Tabbaq, making it impossible to determine whether he is "directly comparable [to Calderon] in all material respects." *LaBella Winnetka,*

*Inc.*, 628 F.3d at 942. With respect to D.W., the complaint does not allege that he was present at the May 20, 2018 incident or that any of the named Defendants ever witnessed him committing a crime, precluding a plausibility determination as to whether D.W. and Tabbaq are, for our purposes, "very similar indeed." *McDonald*, 371 F.3d at 1002.

The Court thus dismisses Calderon's class-of-one claim in its entirety.

## IV. Malicious Prosecution (Count XIII)

The Defendants next challenge Calderon's malicious-prosecution claim against Ortiz, Nesis, and LeFevour. Mem. in Supp. Mot. to Dismiss 1 at 20–22. To state a cause of action for malicious prosecution, "the complaint must contain facts which show (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Ritchey v. Maksin*, 376 N.E.2d 991, 992 (Ill. 1978).

The Court concludes that Calderon has not pleaded a malicious prosecution claim against LeFevour. The complaint alleges that LeFevour, in her role as Ortiz's attorney, "wanted [Calderon] convicted to eliminate the prospect of a false arrest and/or malicious prosecution lawsuit and to minimize any claim predicated on excessive force." TAC ¶ 344. This is not the sort of malice that is required to establish a malicious-prosecution claim, particularly against an attorney. *See, e.g., Farwell v. Senior Servs. Assocs., Inc.*, 970 N.E.2d 49, 58 (Ill. App. Ct. 2012) (holding

13

that malice means that the "attorney intended to harm, which is independent of and unrelated to his desire to protect his client"); *Spicer v. Spicer*, 2017 IL App (1st), 2017 WL 6418308, at *6 (Ill. App. Ct. Dec. 14, 2017) (affirming dismissal of malicious-prosecution claim where plaintiff "failed to allege any facts establishing the malice claimed was directed at plaintiff" and the "actions alleged in the complaint were taken to serve [the defendant's] client.").

The Court reaches the same conclusion as to the malicious prosecution claim against Ortiz and Nesis. Specifically, and as mentioned above, Calderon does not plausibly allege that Ortiz and Nesis acted with animus or malice against him; the complaint lacks sufficient facts to reasonably tie their conduct following the May 20, 2018 Chicago Fire match to any frustration or anger Monterrey Security employees may have felt toward Calderon during an autograph session eight months earlier. *See LeForge*, 2011 WL 1532139, at *5; *Iqbal*, 556 U.S. at 679.

The Court thus dismisses Calderon's malicious-prosecution claim in its entirety.

## V. Intentional Infliction of Emotional Distress (Count XIV)

Finally, the Defendants challenge Calderon's claims of intentional infliction of emotional distress ("IIED"). Mem. in Supp. Mot. to Dismiss 1 at 23–24; Mem. in Supp. Mot. to Dismiss 2 at 14–15. In order to state a claim for IIED, the plaintiff must allege: "(1) that the defendant engaged in extreme and outrageous conduct; (2) that the defendant acted with the intent that his or her conduct would inflict severe emotional distress or acted with the knowledge that there was at least a high

14

probability that his or her conduct would inflict severe emotional distress and recklessly disregarded that possibility; and (3) the plaintiff experienced severe emotional distress." *Einsle v. Alliance Clinical Assocs., S.C.*, Nos. 2-18-0033 & 2-18-0067, 2018 WL 6735404, at *4 (Ill. App. Ct. Dec. 20, 2018) (citing *Gragg v. Calandra*, 696 N.E.3d 1282, 1288 (Ill. App. Ct. 1998)).

The Court dismisses Calderon's IIED claim with respect to Rodriguez. That claim alleges that Rodriguez was aware of evidence that would have exonerated Calderon but failed to provide it to prosecutors. TAC ¶¶ 155, 356. But because "a private complainant lacks the power to preempt the discretion of the prosecutor," "any omission in failing to inform the prosecutor of newly discovered information relevant to the criminal action set in motion would arguably, at best constitute passive conduct that by its very nature could not rise to the level of outrageous conduct." *Adams v. Sussman & Hertzberg, Ltd.*, 684 N.E.2d 935, 952 (Ill. App. Ct. 1997). And the Court is not persuaded by Calderon's citation to *Chatman v. City of Chicago*, No. 14 C 2945, 2018 WL 1519160 (N.D. Ill. March 28, 2018), as that case dealt with a *law enforcement official's* extreme and outrageous conduct of abusing her "*power and authority*" by withholding an exculpatory memo that led to the severe emotional distress of "spending *over a decade in prison* for a crime he did not commit." *Id.* at *20 (emphasis added).

That said, the Court is not prepared to dismiss Calderon's IIED claims as to the remaining Defendants. The motion to dismiss filed by those Defendants only challenged the IIED claims alleged against them through cursory, undeveloped

15

argument that, apart from a general rule statement, lacks any citation to legal authority. Mem. in Supp. Mot. to Dismiss 1 at 23; *see Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted in part and denied in part. Specifically, the Court dismisses Counts I, III, IV, V, VI, VII, and XIII of the third amended complaint in their entirety, dismisses Count II as to Officer Pell, and dismisses Count XIV as to Rodriguez.[3] These dismissals are with prejudice. *See Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007) (stating that a court may deny leave to re-plead a claim where the plaintiff has demonstrated "repeated failure to cure deficiencies by amendments previously allowed"); *Thompson v. Advocate South Suburban Hospital*, No. 15 C 9184, 2016 WL 4439942, at *3 (N.D. Ill. Aug. 23, 2016) ("Given that this is Thompson's third amended complaint, it is appropriate to dismiss the complaint with prejudice.").

**IT IS SO ORDERED.**  ENTERED: 3/9/20

*[signature]*

                                                       **John Z. Lee**
                                                       **United States District Judge**

---

[3] Given that some of the claims challenged in the first motion to dismiss, *see* ECF Nos. 74, 75, will not be dismissed at this stage, the Court will not, for now, grant that motion's request for attorneys' fees under 42 U.S.C. § 1988. *See Westfield Partners, Ltd. v. Hogan*, 744 F. Supp. 189, 191–92 (N.D. Ill. 1990) ("The decision to award attorney's fees and costs is within the broad discretion of the district court.").